```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 2:22-00164

SHAWN K. BEVER

### MEMORANDUM OPINION

On August 24, 2022, Bever was indicted on a single-count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He moved to dismiss the indictment in light of the Supreme Court's decision in <u>New York State Rifle and Pistol Association, Inc. v. Bruen</u>. According to Bever, <u>Bruen</u> renders § 922(g)(1) unconstitutional. On January 4, 2023, the court denied Bever's motion to dismiss. The reasons for that decision follow.

### Analysis

It is a violation of federal law for a convicted felon to possess a firearm. <u>See</u> 18 U.S.C. § 922(g)(1). This law, commonly known as the felon-in-possession statute, prohibits the possession of firearms by all persons convicted of a felony, whether violent or non-violent.[1] The ban against possession of firearms by <u>all</u> felons has been in place since 1961. <u>See</u> <u>United States v. Booker</u>, 644 F.3d 12, 24 (1st Cir. 2011) (noting that "the current federal felony firearm ban differs considerably from the version of the proscription in force just half a century ago"

---

[1] Specifically, the statute makes it illegal for a person who has been convicted of a "crime punishable by imprisonment for a term exceeding one year" to possess a firearm. 18 U.S.C. § 922(g)(1).

and that "[t]he law was expanded to encompass all individuals convicted of a felony . . . in 1961"); see also United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) ("The Federal Firearms Act [enacted in 1938] covered only a few violent offenses; the ban on possession by all felons was not enacted until 1961.") (emphasis in original) (en banc). "In 1968, Congress changed the 'receipt' element of the 1938 law to 'possession,' giving 18 U.S.C. § 922(g)(1) its current form." Skoien, 614 F.3d at 640.

On the other hand, the Second Amendment to the United States Constitution protects the right to keep and bear arms: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Until 2008, challenges to the constitutionality of the felon-in-possession statute were routinely rejected because courts interpreted the rights conferred by the Second Amendment "as a collective right, connected with service in an official state militia, rather than a freestanding, individual right of the citizenry." United States v. Smith, 742 F. Supp.2d 855, 857 (S.D.W. Va. 2010) (Johnston, J.); see also Love v. Pepersack, 47 F.3d 120, 124 (4th Cir. 1995) ("[T]he Second Amendment only confers a collective right of keeping and bearing arms which must bear a reasonable relationship to the preservation or efficiency of a well-regulated militia.") (cleaned up).

In 2008, in its "first in-depth examination of the Second Amendment," the Supreme Court held that the Second Amendment right to keep and bear arms was an individual right, independent of militia service. District of Columbia v. Heller, 554 U.S. 570, 595, 635 (2008). In so doing, the Heller court made clear that "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626. According to the Heller Court:

> Although we do not take an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of guns.

Id. at 626-27.

Two years later, the Court restated the "central holding in Heller: that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." McDonald v. City of Chicago, 561 U.S. 742, 780 (2010). The McDonald court went on to hold that the Second Amendment right is a fundamental right that applies to the states pursuant to the Due Process Clause of the Fourteenth

Amendment. See id. at 791. In so holding, the Court reaffirmed its earlier guidance on Heller's scope:

> It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not a right to keep and carry any weapon whatsoever and for whatever purpose. We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws on the commercial sale of arms. We repeat those assurances here.

Id. at 786 (cleaned up).

Following Heller and McDonald, courts, including the United States Court of Appeals for the Fourth Circuit, analyzed Second Amendment challenges to firearms regulations using a two-step approach. See United States v. Hosford, 843 F.3d 161, 165 (4th Cir. 2016). Under the first step, a court would determine "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment guarantee[.]" Id. Under the second step, "if the challenged regulation d[id] burden conduct within the scope of the Second Amendment as historically understood, the court must apply an appropriate form of means-end scrutiny." Id. (internal citations and quotations omitted). Utilizing this two-step approach, courts routinely rejected challenges to the constitutionality of 18 U.S.C. § 922(g)(1). See United States v. Moore, 666 F.3d 313, 316-17 (4th Cir. 2012)

4

("We begin our analysis by noting the unanimous result reached by every court of appeals that § 922(g)(1) is constitutional, both on its face and as applied. The basis for the various decisions by our sister circuits has varied, but all have uniformly rejected challenges to § 922(g)(1)[.]").

On June 23, 2022, the Court decided New York State Rifle and Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022). In Bruen, the Court considered a challenge to a New York law that required a person to demonstrate that "proper cause" exists in order to obtain a concealed carry license for a firearm. Id. at 2123. According to the Court,

> The standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then, may a court conclude that the individuals's conduct falls outside the Second Amendment's unqualified command.

Id. at 2129-30 (internal citation and quotation omitted). The Bruen Court explicitly rejected lower courts' use of means-ends analysis. See id. at 2127 ("Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the

5

government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."). The Court ultimately held that the New York law's proper-cause requirement violated the Second and Fourteenth Amendments. See id. at 2156.

The concurring and dissenting opinions in Bruen reiterated that its decision did not "disturb[] anything that we said in Heller or McDonald . . . about restrictions that may be imposed on the possession or carrying of guns." Id. at 2157 (Alito, J., concurring). Justice Alito went on to write that "Heller correctly recognized that the Second Amendment codifies that right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun." Id. at 2161. Justice Breyer's dissent, joined by Justices Sotomayor and Kagan, wrote that he understood "the Court's opinion today to cast no doubt on Heller's treatment of laws prohibiting possession of firearms by felons. Id. at 2189.

Justice Kavanaugh, joined by Chief Justice Roberts, also wrote separately to "underscore . . . the limits of the Court's decision." Id. (Kavanaugh, J., concurring). According to Justice Kavanaugh, "as Heller and McDonald established and the Court today again explains, the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check. . . . Properly interpreted, the Second Amendment allows a variety of

gun regulations." Id. at 2162 (cleaned up).  Justice Kavanaugh went on to quote Heller and what he deemed to be "the principal opinion in McDonald."

> Like most rights, the right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill.

Id.

In addition, the majority opinion in Bruen made repeated references to the right to bear arms as belonging to "law-abiding" citizens.  Id. at 2122.

> [In Heller and McDonald, we] recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense.  In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense.  We too agree.

Id.  The Court also noted on several occasions that petitioners were "ordinary, law-abiding, adult citizens."  Id. at 2134; see also id. at 2124-25 (referring to petitioners as "law-abiding, adult citizens).  And, finally, the majority opinion ultimately held that "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."  Id. at 2156 (emphasis added).

Post-Bruen, a number of criminal defendants have raised the same challenge that Bever makes herein: that 18 U.S.C. § 922(g)(1) violates the Second Amendment right of a convicted felon to possess firearms. These challenges have been routinely rejected although courts have decided the issue in various ways. See, e.g., United States v. Williams, CRIMINAL ACTION NO. 1:21-CR-00362-LMM-LTW-1, 2022 WL 17852517, at *2 (N.D. Ga. Dec. 22, 2022) ("[T]he Court concludes that Rozier remains controlling precedent in this circuit. As a district court bound to follow this circuit's controlling precedent, it is not for the Court to decide whether Bruen may ultimately be held to abrogate Rozier."); United States v. Carpenter, Case No. 1:21-cr-00086-DBB, 2022 WL 16855533, at *4 n.39 (D. Utah Nov. 10, 2022). Some courts have concluded that nothing in Bruen upsets their appeals court precedent explicitly upholding the constitutionality of § 922(g)(1) and, therefore, further analysis is unnecessary. See, e.g., United States v. Siddoway, Case No. 1:21-cr-00205-BLW, 2022 WL 4482739, at *1 (D. Idaho Sept. 27, 2022) ("Although Mr. Siddoway would like the Court to scrutinize the history of felon-in-possession statutes, such examination is unnecessary at this time. The Court is bound by Vongxay [594 F.3d 1043 (9th Cir. 2014)] and the motion must be denied.").

Other courts have pointed to the concurring and dissenting opinions in Bruen which stated that nothing in Bruen disturbed

the court's earlier decisions in Heller and McDonald upholding prohibitions against felons possessing firearms. See, e.g., United States v. Dawson, 3:21-CR-00293-RJC-DCK, 2022 WL 17839807, at *1 (W.D.N.C. Dec. 21, 2022) ("The defendant admits he is a convicted felon, . . . thus, his reliance on Bruen is misplaced.").

And some courts have relied on both, looking to both their appeals court precedent, as well as the language in Heller, McDonald, and Bruen, in rejecting challenges to the constitutionality of 922(g)(1).  See, e.g., United States v. Robinson-Davis, Case No. 7:22-cr-00045, 2023 WL 2495805, at *3 (W.D. Va. Mar. 14, 2023) ("Although courts have cited various reasons for denying these Bruen challenges, this court adopts what it believes is the most salient rationale, and the one that militates denial of Defendant's motion.  Lower courts must take the Supreme Court at its word that its recent jurisprudence, which has further strengthened Second Amendment rights, should not be read to push § 922(g)(1) outside the safe harbor of the presumptively valid firearms regulations not subject to heightened scrutiny. . . . [T]his court must conclude that the Fourth Circuit decisions in Moore and Pruess, both of which affirmed the constitutionality of § 922(g)(1) after Heller, remain good law and require denial of Defendant's motion.") (internal quotations omitted); Carpenter, 2022 WL 16855533, at *3

("There is nothing in <u>Bruen</u> to indicate that either <u>Heller</u>, Tenth Circuit precedent based on <u>Heller</u>, or § 922(g)(1) are no longer valid."); <u>United States v. Butts</u>, CR22-33-M-DWM, 2022 WL 16553037, at *2 (D. Mont. Oct. 31, 2022) ("While <u>Bruen</u> clarifies the standard courts must apply in assessing firearm regulations, <u>Bruen</u>'s impact on existing precedent is less clear.  This uncertainty takes two forms: (1) the impact of what Butts characterizes as Supreme Court 'dicta' and (2) the precedential value of the Ninth Circuit's decision in <u>United States v. Vongxay</u>, 594 F.3d 1111 (9th Cir. 2010), which upheld § 922(g)(1) pre-<u>Bruen</u>.  As it turns out, contrary to Butts's position, both provide independent, legal grounds for denying Butts's motion.").

A number of courts have analyzed § 922(g) under the test laid out in <u>Bruen</u> and concluded that the statute does not violate the Second Amendment.  Some courts have reached this conclusion based on the first part of the <u>Bruen</u> test, holding that the reference to "the people" in the Second Amendment does not include felons.  <u>See, e.g.</u>, <u>United States v. Hill</u>, Criminal Action H-22-249, 2022 WL 17069855, at *5 (S.D. Tex. Nov. 17, 2022) ("This Court holds that 18 U.S.C. § 922(g)(1) remains constitutional in the aftermath of <u>Bruen</u>; in applying its test, this Court finds that felons are not covered under the plain text of the Second Amendment, because they are not within the categories of individuals which the plain text 'presumably

10

protects.' Therefore, an analysis of whether such regulation is justified by our historical tradition is unnecessary.").[2]

Other courts have considered the second part of the Bruen test and concluded that while convicted felons might be included in "the people" referenced in the Second Amendment, disarming them is nevertheless consistent with this Nation's historical tradition of firearm regulation. See, e.g., United States v. Goins, Criminal No. 5:22-cr-00091-GFVT-MAS-1, 2022 WL 17836677, at *1 (E.D. Ky. Dec. 21, 2022) (rejecting defendant's as-applied challenge to 18 U.S.C. § 922(g)(1) because "the British common law that informed our founding era enactments included the power to disarm individuals who posed a danger to public safety" and defendant's "criminal record suggests that his crimes were similarly dangerous").

Finally, other courts have applied the Bruen test but nevertheless conclude that an in-depth historical analysis is unnecessary as to 18 U.S.C. § 922(g)(1). See, e.g., United States v. Price, CRIMINAL ACTION NO. 2:22-cr-00097, 2022 WL 6968457, at *8 (S.D.W. Va. Oct. 12, 2022) ("I do not find it necessary to engage in the historical analysis test articulated

---

[2] The Hill court noted that "[e]ven if th[e] Court were to undertake a historical analysis, its conclusion would be that felon-in-possession statutes do fall within our historical tradition of firearm regulation, for the reasons enumerated by other district courts nationwide that have engaged in this analysis to-date, all of which ha[ve] answered the question in the affirmative." Hill, 2022 WL 17069855, at *5.

in Bruen as to U.S.C. § 922(g)(1). Rather, I am convinced that the Supreme Court left generally undisturbed the regulatory framework that keeps firearms out of the hands of dangerous felons through its decision in Bruen by reaffirming and adhering to its reasoning in Heller and McDonald. Mr. Price essentially argues that Bruen should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons, which is a marked departure from McDonald and Heller that was specifically not taken by the Supreme Court in Bruen.") (Goodwin, J.).[3]

At the time the court denied defendant's motion to dismiss, every court to have considered the issue had rejected Bruen challenges to the constitutionality of 18 U.S.C. § 922(g)(1). This court, relying on the unanimous nature of those decisions concluded that the federal felon-in-possession statute does not run afoul of the Second Amendment post-Bruen. That overwhelming consensus has only grown with the passage of time. As of today's date, "over 100 district courts have held that federal law prohibiting felons from possessing firearms remains valid even after Bruen." Robinson-Davis, 2023 WL 2495805, at *2. This court remains convinced that nothing in Bruen upsets the Fourth

---

[3] The Price court went on to "find that even if the Supreme Court intended for courts to re-examine felon-in-possession statutes, the Government has met its burden of proving that Section 922(g)(1) fits comfortably within the nation's longstanding tradition of disarming unvirtuous or dangerous citizens." Price, 2022 WL 6968457, at *8 n.4.

12

Circuit's decision in Moore upholding the constitutionality of 18 U.S.C. § 922(g)(1). And, consistent with the decisions of other judges of this court, the court concludes that 18 U.S.C. § 922(g)(1) is consistent with the United States' historical tradition of firearm regulation. See United States v. Bradley, CRIMINAL ACTION NO. 2:22-cr-00098, 2023 WL 2621352, at *2 (S.D.W. Va. Mar. 23, 2023) (Berger, J.); Price, 2022 WL 6968457, at *8. For all these reasons, defendant's motion to dismiss the indictment was denied.

The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record, to the United States Marshal for the Southern District of West Virginia, and to the Probation Office of this court.

IT IS SO ORDERED this 18th day of April, 2023.

ENTER:

David A. Faber
Senior United States District Judge